Good morning, Counsel. Good morning, Your Honor. Good morning, and may it please the Court. I'm Linda Coberly. I'm speaking for Lincoln Benefit Life, and if it's okay with the Court, I'd like to reserve seven minutes for rebuttal, please. All right, Counsel. Please be reminded that the time shown on the clock is your total time remaining. Got it. Thank you. So, small controls here as well. Unlike the case, this is a class certification appeal, just like small was. And under small, while we may lose on commonality, we win on typicality, adequacy, and the limits of 23B2. Now, the panel asked the parties in our case to brief the impact of small, and we did that. Our supplemental brief shows that there is no material difference between this case and small in terms of the Rule 23A or B2 analysis. The plaintiff's brief, on the other hand, takes the position that small is just wrong. In effect, she's asking this panel to ignore or overrule a decision of another, and that's not proper. Well, but your adversary also made the following argument, and I wondered what you thought about this. Here, small was influenced, as the court there repeatedly said, by the fact that many people will choose to have their policies lapse voluntarily because they can't pay or they want to take a new policy or with another company or whatever reason. And therefore, the causation question is not an automatic and varies tremendously and so forth. But here, says your adversary, and I'm quoting from their supplemental brief, the court expressly limited class relief to a letter giving class members the option to reinstate their policy, obviating concerns about members who do not want their policies, close quote. What about that? So, it's just not true, Your Honor. Neither Ms. Farley nor the court limited the relief in that respect. Ms. Farley sought relief saying that the policies remained in force and should be treated as in force. That's exactly the same relief that was at issue in small. And if you look at the class certification order, you can see that the district court understood that that was precisely the relief that was being sought. On page 15 of the certification order, the district court explained that the relief sought and the relief that was the basis for a B2 class was that the policies should be treated as in force and that the defendants would be ordered to reinstate. That's forced reinstatement. That's exactly the same as in small. It's effectively specific performance and it's a contract remedy. So, there is no difference between small and Farley in that respect. And what they've said, the way they said they limited the relief just isn't true. But also, requiring the defendants to give an option to reinstate wouldn't obviate the problem anyway, which is their argument in the supplemental brief. For an intentional lapser, which Your Honor raised a moment ago, the question isn't whether they want the policy now. The question is whether they made a choice back then to end their insurance contracts and they exercised that choice by stopping their premium payments so that they would get the benefit of the 60-day grace period. If they did that, there is no resulting harm to those intentional lapsers. And that's what California law requires for a contract remedy like the remedy sought here. So, even if the remedy in this case was an option to reinstate, it still wouldn't be appropriate for an intentional lapser. And in any event, this whole concept of an option to reinstate is not appropriate as a basis for a B2 class because the whole point of B2 is there's no opting. A B2 class must be based on the concept of final relief that is appropriate respecting the class as a whole. You can't dodge the appropriateness requirement by just saying that if a particular class member doesn't want the relief, they can opt out. That's fundamentally inconsistent with the kind of class-wide relief that's contemplated under B2. Also, I'll note that this very same argument was made in small. Mr. Cimino, in his oral argument, made precisely this argument in small and it did not sway the court. There's only one other basis that this supplemental brief offers for distinguishing this case from small. You may recall that the first nine pages of the brief are about small being wrong. The last page is about distinguishing small. And the other potential ground for distinguishing is the supplemental brief says there is no adequacy problem here because the court only certified a class of policyholders. That's not true either. Counsel, let me ask you this. Small, obviously, is huge in this. It's interesting when small is big, but in this case it is. But I would like to ask you, putting aside for a moment, putting small aside, there are obviously four elements to this class certification. All of them are not governed by small. What's your position about the remaining aspects of the class? The district court seemed to find they were all satisfied. What's your argument about the portions, like commonality, numerosity, and so on, that are required but are not satisfied here from your perspective, putting small aside? So numerosity is not disputed. Okay. Commonality, if we're bound by small, then I have to, which I think we are, then I have to concede that we lose on commonality because the small court held that commonality was satisfied. So that leaves a couple of other arguments that we made that are additional grounds for reversing the class certification order that were not addressed by small. One of them is, and I'll raise three of them. First of all, there's the issue of replacement coverage. What about someone who got replacement coverage, like Ms. Sino did in the first case that you heard? If someone like her has a claim, it's for damages. It's not for reinstatement. And that the present- What do you say to the argument that was made in the prior case when I raised that kind of issue that, well, you might want double coverage? Well, you might, factually, but if you didn't want double, that's a factual question, whether you wanted double coverage or not. Ms. Sino didn't want double coverage, apparently. And if someone failed to, this is all a question. If you allow a policy to lapse, and that's a way to cancel the policy, and you go on to get replacement coverage, you represent to the next insurer that your first coverage has ended. And so, one very good indication of whether someone wanted duplicative coverage would be whether they made such a representation. In addition, there would be an issue, for example, think about the beneficiaries. You might have, there are beneficiaries in this class, as I was going to say a moment ago. It's just not true that this class is limited to policyholders. This B2 class also specifically includes beneficiaries of policyholders who are no longer with us. Well, how are we going to reinstate those policies when the policyholder has died? We have no idea whether the policyholder would want the beneficiary to be the same today as the one they originally designated. We will have a hard time deciphering whether the policyholder who stopped paying did so as a way to intentionally terminate the policy. And if the beneficiary receives a payout on that policy, it's just a windfall. That would not be an appropriate remedy. So, this issue about replacement coverage is important for a couple of reasons. First of all, it gets in the way of B2, a single kind of relief under B2 being final and appropriate for everyone. It's also an adequacy problem, and it's a typicality problem. And those are issues that SMAL did not address. Additional issues that SMAL did not need to reach because it found the class to be uncertifiable for other reasons. There's another issue, and that is there are three different, or three or four more, different kinds of notice violations that are alleged in these cases for our client, or for, sorry, I'm sorry, for my client and the particular plaintiff who is the lead plaintiff in our case. The only notice violation she complains of is that she didn't receive an annual notice reminding her that she could designate a third party to receive a notice. When it comes to the statutory arguments, that person, a person in her position is in the weakest possible position. There's a state law issue to be resolved there at some point. It doesn't need to be resolved for purposes of this appeal, but her argument is a little bit different than the rest of the class members. That too is an adequacy and typicality problem. And then finally, and we briefed this at length, there's the issue of the inclusion of incidental monetary damages or what the plaintiff describes as incidental monetary damages in this B2 class. The class includes beneficiaries who aren't entitled to notices or reinstatement. What they're entitled to, all they're conceivably entitled to, would be the payment of death benefits as damages. The district court here said that was just incidental because they're a small portion of the class. But that's not going to be an option. To put some kind of a cabining on this, was there any discussion in the record as to how much money are we talking about potentially in these so-called incidental damages? Any idea? Tens of millions of dollars. Tens of millions. So lots and lots and lots of money. Lots and lots and lots of money. And that's just not the right analysis. And in Dukes, the Supreme Court rejected what was called a predominance analysis for whether damages were incidental to relief under B2. And the court said that's not the right way to look at it. We don't look at whether it's a lot or a little. We look at whether the nature of the claim of the monetary relief is something that just flows from the declaratory relief, or is it really something else entirely? And here it's something else entirely. And so deciding that it only impacts a small portion of the class doesn't enable you to keep the class in place. I assume that these incidental damages would play an enormous role in the amount of attorney fees that would be granted for the class to be successful, right? I think that is a fair assumption. I know it's a shock. I just say it. The point you're making about incidental damages, that was, in Dukes, the one respect in which the court was unanimous, if I recall correctly, even though they were hotly divided over commonality. They were not divided over that at all. Yes, yes. And a B2 class is supposed to be all the same. That's the point. And we actually care a lot about the unanimity of a B2 class because of the due process concerns. I mean, if you certify a B2 class and the class member loses, that can have issue preclusion effect on a future case that they might bring. Dukes talked about that. It's a very important consideration. So we can't just gloss over the disparities or differences among the class members and say, oh, it's a B2 class. We don't care about that. We actually care a lot about that. And that's why B2 looks so intently at the relief and whether there really is relief that could be granted across the entire class that would be final and appropriate. And here, the relief that was sought does not meet that criteria. I'd like to say one quick word about the certification issue that came up in the first argument. The plaintiff here says the court should grant certification to a spontee because there's no proper request by the plaintiff pending. That's just not appropriate here for a whole range of reasons, including because resolving the state law question that they want certified wouldn't determine the outcome of this federal Rule 23 appeal. The small court had no trouble resolving the one state law question that matters to Rule 23 analysis, which is whether a plaintiff who is seeking relief that is fundamentally contract relief has to prove the elements of a breach of contract. That's not a hard question. And the small court had no trouble concluding that the California Supreme Court would say, yes, you have to prove the elements of a breach of contract. The question that Ms. Farley wants the court to certify is whether an insurer's failure to comply with the statutes means the policy doesn't lapse. But no matter how that question of state law comes out, you would still have a problem with the B-2 class here because the relief is still not final appropriate relief for the class that includes both intentional and inadvertent lapses. You would still have an adequacy problem with the policy holder trying to represent beneficiaries who have different interests. You would still have a typicality problem given the presence of intentional lapses in the class. And you would still have the other problems we've already talked about that the small court didn't even need to reach. So that gets back to the question I raised earlier, which is putting small aside, I gather your position is there are still so many issues with the B-2 certification that the case could be decided without even getting to the causation issue. Is that correct? Absolutely, Your Honor. And if there are no further questions right now, I'll save the rest of my time. All right. Thank you, counsel. Thank you, Your Honors. Good morning again. Ben Cimino once again on behalf of the plaintiff. I want to dive in on, I think, what I regard as the most important question, which is whether or not to certify this to the California Supreme Court. Judge Rakoff, you mentioned what we're calling the Q3, the court of appeal decision. I don't know why anyone would regard that as clairvoyant on this question. Number one, the court itself said that they are not addressing this. I think the small court, of course, could have certified it to the California court. They felt that it was not appropriate or not necessary, really. They felt rightly or wrongly that they knew where the California court would come out, and so they determined it. Why isn't that just as binding on us as every other aspect of small? Well, I think that the ability to certify questions is different than following a panel opinion if it's binding, because otherwise, effectively, that would create a system in which federal courts could create a super stare decisis on state law that even state courts couldn't deal with. Why is that, counsel? Even if we just take what Judge Rakoff said, we have a small determination that there was no certification necessary, you seem to be saying that if a separate case came along through the California appellate courts, went to the California Supreme Court, and the California Supreme Court ultimately disagreed on that issue, that somehow they couldn't do that because of the small case? Is that what you're saying? I'm not saying that at all. I'm just staying with the reality that these cases often get, if not exclusively, get shuffled into federal court because you've got out-of-state insurers and in-state plaintiffs, and so these cases are inevitably diversity cases. They come before you, and if you're just going to use small like a cinder block and jump into the ocean with it around your ankle, it's going to essentially freeze- Wow, that's quite a description. Do you represent any mafia? I don't, I don't. If we're not only going to treat small as binding, even when the ink hasn't yet dried, and yet also go one step further and say, now it also ties our hands and we can never ask the California Supreme Court what it thinks, even if we have doubts about small, then because these cases find their way into federal courts almost invariably, it's a sort of a superstar decisis, and I just think- Right, Your Honor, but they would need a case to come through the state system, and my point is that these cases don't do that. They tend almost exclusively, if not exclusively, to be removed to federal court. Well, there's a body of law in the California courts that was cited. I mean, you're right. Back then, there was. I think that those cases probably all predate CAFA, so that's a big issue, but those cases, actually, I'm glad you brought them up because I think there's a lot of reason to doubt McHugh 3 on its face. I mean, number one, it was issued by the same court of appeal that got the issue in McHugh 2 just dead wrong. It's also an unpublished opinion, and again, it disavowed any intent to address this issue, and on this issue, it both giveth and taketh away. I mean, my friends on the other side celebrate the fact that it affirmed the trial court's decision not to give the instruction that was proposed by the plaintiff, which is exactly our theory here, but that wasn't because the court thought it was wrong. It thought it was just duplicative. It just thought that, like, hey, we're already going to read the text of the statutes to the jury. We don't need to then essentially say the same thing in different words with this special instruction. I mean, how is that anything but an endorsement of our theory, not the defense? But to the point that you just mentioned, Your Honor, about these other intermediate court of appeal cases that go back, I think, 80 years or so, those cases, I mean, if you want to put McHugh III on one side of the scales and those cases on the other, I think it's quite obvious that those cases just completely outweigh McHugh III, and, you know, I think in the last argument and in small and even in McHugh III, there's this sort of, like, you know, weak attempt to distinguish those cases because they're home and auto cases, but that's wrong for a couple reasons. Number one, as a policy matter, I'm not sure why we're drawing distinctions between home and auto policies versus life insurance. McHugh II, the Supreme Court's opinion, is very, very clear that the long-term nature of life insurance requires at least as much, if not more, anti-lapse protection. Counsel, you obviously are an expert in insurance law, for which I congratulate you. I'm sure it's an interesting area, but the reality is that under our law, except as provided in Miller v. Gammey, which allows us to overrule or overlook a binding precedent, unless you're able to overturn small, the fact that our court did not certify the case to the California Supreme Court, it doesn't matter whether they were right or wrong, we're bound by it. We're just flat-out bound by it, and even though you disagree, and I understand your reasoning for that, the fact is we can't change that. We're a three-judge panel. We're bound by the previous public opinion, post-opinion. If you can overturn small, then that changes the ballgame, but until you do, we're bound by it, are we not? I think not, certainly, as to the question of certifying questions to the California Supreme Court. I'm aware of no authority that would suggest that. Ten years passes, are we really stuck with small, or can we say? Are you aware of an authority to the contrary that says that we can? That you can certify? If we have an opinion where we've construed, in this case, California law to mean a certain thing that was not certified to the California Supreme Court, are you aware of an opinion that says, in your example, ten years down the road that we can sui sponte, certify a question to the California Supreme Court that has already been decided by our court? Where's that case? I think so. I think the, and I may mispronounce it, but the Troster case that we cited on page nine of our supplemental brief stands for that premise. But it doesn't involve those facts, though, does it? Well, I don't know about the ten-year gap. I sort of made that up. Even put that aside, did you tell us that that case involved a, one of our panels certifying a question to a state Supreme Court that had already been decided by one of our courts in a published opinion? Correct, I believe. Is that what that case says? That's how I read that case, Your Honor. On page 513 of that decision, there was both an unpublished and a published decision on the issue, and the court said, well, we're going to still certify it. Well, wait a minute. You're talking about Troster versus Starbucks? Is that what you're talking about? Correct, Your Honor. So, there, if I recall correctly, the court said, the Ninth Circuit said, quote, a panel of the circuit in an unpublished disposition predicted that the California Supreme Court would decide the doctrine is applicable to such claims. That, of course, brings up the familiar point that unpublished decisions are not precedential, whereas small clearly is a published opinion and is precedential. Right, Your Honor, and if you keep reading in that portion after it references that unpublished opinion, it mentions at least one published opinion that also addressed the issue, and it did not stop that court, that panel from certifying the question. And I'm not sure why we would bind it. Certainly, I'm not aware of any case that says the opposite, that, you know, thou shall not certify if there is a binding published opinion from the circuit. Well, counsel, when we certify, we are representing to the California Supreme Court that there is some uncertainty about the issue, and if we have binding precedent, can we certify that there is uncertainty in our jurisprudence? I think so. I mean, I think that you certainly can certify that there's uncertainty among the state courts. I mean, maybe there's not uncertainty in the federal, but there's uncertainty in the state courts. And I mean, again, like this is, I understand small exists, but, you know, small just makes that uncertainty all the more obvious, because now you have two decisions by this conflict directly. Isn't this more an argument for your petition for re-hearing and bunk? Rather than asking one panel to, in effect, deviate, as my colleagues and I seem to agree, from the binding force of another panel, an earlier panel, you always have the remedy of asking the court as a whole to take a different view. And maybe we should hold off deciding this matter until your petition for re-hearing and bunk is resolved. But I don't see that we're the where that argument has any force. Well, sure. Yes, of course, a lot of what I'm saying here overlaps with our position on the petition for re-hearing and bunk. But, you know, I mean, these cases were queued up. They were assigned to different panels, it appears. And, you know, I assume that was for a reason. I mean, I don't know why otherwise the court perhaps should have just consolidated all these cases or coordinated them in front of a single panel if we were just to say, you know, whoever got there first is going to decide the fate for the rest. But that's what we do. Whichever panel has precedent is the senior panel for purposes of deciding the case. And the other cases, unless the facts are somewhat different, then are bound by that. So that's how we usually proceed. It's not nothing special about this case that we proceeded in this way. We do that as a matter of practice. But let me ask you this. So you're arguing very strenuously for us to certify. Is there a concession on your part that if we treat small as precedent, you lose? Look, I'll be very straightforward with you on that. I mean, we made that position in our motion to certify and Moriarty and her joined her in this case that we think this issue controls. And when I say this issue, I want to come back to that because I think there was some misdirection by my friend on that. But yes, I think that small probably is going to back to that cinder block that I mentioned with a couple of caveats. And we set them out at the end of our supplemental brief, which is we do expressly want to limit the class relief in this case to something that goes out to the class members that says, you know, good news, this policy is reinstatable. I think my friend said, you know, that's just a we made that up. Not so. I'm looking at page 48 of the excerpts of record and it's the transcript from the hearing where we made expressly clear that this is all we want. And specifically so that nobody who doesn't want a policy has to pay a dime in premium for a policy they don't want. So that was absolutely what we were seeking when we were seeking class cert. And that's exactly how we framed it. So I think that is significant because that really does take this what I'm going to call a manufactured issue of these people who wanted to cancel their policies or didn't want their policy anymore. That completely absolves that. Also, another thing that may distinguish the court's treatment of this case from small is that this issue of like, you know, intentional cancellations or intentional lapses has largely been ameliorated by their own It was their own deponent, their person most knowledgeable who said, you know, we do track and report these people who want to terminate their policies. And we do have that data. And those people are not part of this class. So there's an evidentiary issue here that is significant relative to small. But I do want to jump back to this issue that I touched on a moment ago about what the issue that we think needs to be certified is. We've been pigeonholed into this breach of contract frame, you know, does count, do the statutes, I think the argument is, do the statutes do away with the ordinary rules of breach of contract claims? That is not the issue that we're trying to clarify. That's the issue that they're, that's the straw man they're putting up. The question is, do the statutes keep the policies in force when they're terminated, when the insurers violate the notice provisions? If the answer is yes, it completely and radically changes the landscape. If the answer is no, then we're certainly probably in the world where they want us to be, which is we have to prove causation. And but for the failure to give us the notice, we wouldn't have missed our premium, et cetera. But that's not how the statutes, I mean, they could not have been drafted any more clearly. And so when you understand that the policy remains in force, it changes the breach of contract analysis, because we're not here to say you breached by not doing the notice, it's you breached by canceling the policy. And if... Counsel, I, with respect, I mean, so you could obviously argue your case however you wish, but at least from my part, I think I know your position well about the certification issue. And I get your position about deck relief versus a breach of contract claim. Would you address the other elements of a B2 claim? Your opposing counsel talked about those and argues with some strength that besides the issue of causation, that you've got a problem with typicality, et cetera. Would you address those, please? Sure, Your Honor. So on the typicality, I mean, I very much disagree with Small's characterization that because we... Well, let me take a step back even before I attack that. Number one, I mean, we are a policy owner. I think it's, and I have the numbers that of this class, we've got 33,000 approximately policies at issue. Of those, approximately 32,700 are living insurance. There's only 400 that are with deceased insurance. So the beneficiary subclass, call it what you will, is really a small piece of this. We are one of the 32,700 as a policy holder, my client is. And so I think if we're really going to have trouble with this other 400 as somehow spoiling the adequacy and typicality analyses, then we can hive those off as a separate subclass. We can get a representative for that class if we need to. I don't think that that's a reason to flush this whole enterprise on adequacy. Do you agree with your opposing counsel that tens of millions of dollars are involved in the incidental damages claims? I think that's probably, I don't know if it's tens of millions. I honestly don't know what the number is. It involves millions in some level, right? Sure, it's a lot of money. But the thing that's left out of that is that this 32,700, that's a lot of money too. And I don't know how many times 400 goes into 32,700, but it's a lot. And so if we're going to do a relative analysis on what's the predominant here and what's the ancillary, again, I don't do math, but 32,700 is a lot more than 400. So on that piece, I think that's probably a sufficient answer. But I do want to get back to this adequacy and typicality thing. I don't know why we're getting so wrapped around the axle that, well, gee, if you're just a policy owner with a living insured and you're here to say you didn't do these notices, therefore the policies are back in force, why that somehow makes you not a proper person to represent a subclass of a small number of beneficiaries who are entitled to money as a derivative of that inclusion. It's sort of like, I mean, I get it. The analogy may be if you're taking someone home from work, dropping them off at their house, if their house is the exit past yours, then maybe you wouldn't be a good fit to take them home. But if their exit is the one before yours, I don't see why that wouldn't be a sufficient person to take you home. And the point is that everybody has to go through this first threshold step. Both subclasses have to go through the first threshold step of, did they terminate a policy that they were not allowed to terminate? So, everybody has to pass that exit. And that's just, I mean, it's sort of a lesser included finding in order to get where we need to go on the beneficiaries. So, I don't... So, I'm not sure how you square that argument with Dukes. In Dukes, the plaintiff was arguing, we're saying that women should have been promoted to higher positions. And by the way, it would follow from that, that if they were, they would be entitled to more money, but that's just incidental. And the Supreme Court totally, unanimously rejected that argument and said, no, it's really a disguised B3 class. Yeah. So, the reason why is because the finding that you were discriminated against really doesn't do anything for you unless it translated into some sort of monetary relief. But we're talking about insurance coverage. So, the idea that you have your coverage restored does do something for you. It is significant in and of itself. It doesn't have to have something beyond that to give it meaning to the people that want it. And I do want to... Your question, Your Honor, did raise one to make sure I touched on. This too is from the small opinion and my friend mentioned it, that what we're trying to do is antithetical to B2 because B2 is not an opt anything. And I want to be very clear. The opt piece is sort of becoming a distraction because it's ameliorating their concern about unintentional... People who want to intentionally lapse their policies. But the relief we are seeking is a declaration that goes out, shout it from the rooftops, drop leaflets from a plane, that your policy was wrongfully terminated. They did not have the right to terminate your policy. And so, if it's something you want, go get it. You have options, you have remedies, you have recourse, go to court, do whatever it is that you do. But you have a policy that they illegally terminated. That's all we're seeking with B2. And that is uniform and goes to everyone and doesn't require opt ins or opt outs or opt anything. So, that's an issue that I think is really a molehill that's been made into a mountain. I guess, I see that I'm past my time, but I do want to, again, stress that this court, if it has any doubts whatsoever about Small, and I feel like I'm sensing that there might be a little bit, that this court does not pass up the opportunity to certify this question to the California Supreme Court so we can get an enduring answer to this very important question. Thank you, Counsel. Rebuttal. Thank you, Your Honor. The Small case stands for the proposition that under California law, as it exists today, there's no certification necessary. The question is not hard. A plaintiff seeking a contract remedy has to prove the elements of breach of contract, period. If something changes in California law, if, for example, the California Supreme Court came out with a new decision or a different body of California law emerged, then, of course, a plaintiff could come back to this court and say, now there's a question to be certified. But until that happens, there is no basis for certification because Small is binding. We talked earlier about why Small is binding. I want to refer the court to General Order 4.1A that makes the Small panel the lead panel on common issues. And also, to two cases, I believe Counsel said earlier that Carver is the closest on the binding nature of Small. I'd like to refer the court to U.S. v. Eckford, 77 F. 4th at 1233. That holds that a panel opinion is binding on subsequent panels unless and until overruled by an embanked decision. And that's true even before the mandate issues. And for that, I'll refer the court to Inrazer Menno Gomez, 868 F. 3rd at 1052. Now, beyond that, Your Honor, Counsel still hasn't explained how resolving the certified question, the question that they seek to certify, which is about whether a policy can lapse after a violation of notice provisions. They still haven't explained how that would solve the basic Rule 23 problems. You would still have the problem with the B-2 relief. Counsel just said, well, it would at least be a threshold step. But that's exactly what B-2 prohibits. B-2 requires that the relief be final, not a threshold step. You would still have an adequacy problem with the policyholder trying to represent beneficiaries with different interests. Counsel said, well, that shouldn't be a big deal. But that's exactly what Small held. And once again, Small's decision on that issue, is binding on this panel. You still have a typicality problem given the presence of intentional lapsers in the class. And you would still have the other problems that I mentioned here that Small didn't need to reach and that Counsel didn't address. And that includes the district court's willingness to certify a B-2 class that includes claims for money damages. There was a, I heard again that Counsel was really just seeking a declaration of an option to reinstate. And that totally solves the problem of intentional lapsers. But I haven't heard any response to the basic problem that the question for intentional lapsers isn't whether they want the policy now. It's whether they gave it up on purpose by stopping payments. Because California law requires a showing of resulting harm. Counsel is conflating two different kinds of causation, causation of the lapse and causation of harm. It's the latter, causation of harm, that was the basis for the Small decision. And that's what makes the problem of intentional lapsers fatal to this class. LBL does not track or have the ability to easily identify intentional lapsers. We put in an expert report on this. Yes, there are certain people who voluntarily surrender their universal life policies and cash them out. They're not in the class at all. I agree with that. There are also people who call up and say, hey, I really don't want this policy anymore. What do I do? And LBL will say, you know what you should do? Just stop paying the premiums because then you get 60 days of free coverage under the grace provision. And that's what they did. But then there are other people who never called. There are other people for whom all we have is some circumstantial evidence, maybe, of why they stopped paying. Otherwise, it requires actually talking to these people. That's what our experts said. That's what the record said. And that's one of many reasons why this order needs to be reversed, Your Honors. All right. Thank you, counsel. Thank you to both counsel. The case is argued is submitted for decision by the court that completes our calendar for the morning. We are in recess until 9 30 a.m. tomorrow morning. This card for this session stands adjourned.
judges: RAWLINSON, SMITH, Rakoff